UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| DIANA L. MCCORKLE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CAUSE NO. 1:20-cv-00459-SLC |
| | ) |
| COMMISSIONER OF SOCIAL | ) |
| SECURITY, *sued as Kilolo Kijakazi,* | ) |
| *Commissioner of the Social Security* | ) |
| *Administration,*[1] | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

Plaintiff Diana L. McCorkle appeals to the district court from a final decision of the Commissioner of Social Security ("Commissioner") denying her application under the Social Security Act (the "Act") for Disability Insurance Benefits ("DIB"). (ECF 1). For the following reasons, the Commissioner's decision will be AFFIRMED.

## I.  FACTUAL AND PROCEDURAL HISTORY

McCorkle applied for DIB in June 2018 alleging disability as of May 14, 2018. (ECF 16 Administrative Record ("AR") 18, 161). McCorkle's application was denied initially and on reconsideration. (AR 18, 63-71, 73-85). On January 27, 2020, administrative law judge ("ALJ") Genevieve Adamo conducted an administrative hearing at which McCorkle, who was represented by counsel, and a vocational expert ("VE") testified. (AR 37-61). On February 26, 2020, the ALJ rendered an unfavorable decision to McCorkle, concluding that she was not

---

[1] Kilolo Kijakazi is now the Acting Commissioner of Social Security, *see, e.g.*, *Butler v. Kijakazi*, 4 F.4th 498 (7th Cir. 2021), and thus, she is automatically substituted for Andrew Saul in this case, *see* Fed. R. Civ. P. 25(d).

disabled because she could perform her past relevant work despite the limitations caused by her impairments. (AR 15-29). The Appeals Council denied McCorkle's request for review (AR 1-6), at which point the ALJ's decision became the final decision of the Commissioner. *See* 20 C.F.R. § 404.981.

McCorkle filed a complaint with this Court on December 10, 2020, seeking relief from the Commissioner's decision. (ECF 1). In her opening brief, McCorkle contends that the ALJ improperly played doctor when evaluating McCorkle's migraines. (ECF 20 at 12). The Commissioner filed a timely response brief in opposition to McCorkle's argument. (ECF 21). McCorkle, however, failed to file a reply brief, and her time to do so has now passed. (ECF 22 through 25).

At the time of the ALJ's decision, McCorkle was fifty-four years old (AR 161), had a high school education (AR 192), and had past work experience as an administrative assistant, payroll billing clerk, and a molding operator (AR 28, 193). In her application, McCorkle alleged disability due to neurological brain damage, diabetes, bulging and degenerating spinal discs, severe arthritis in her vertebrae, and daily migraines, the last three of which she attributes to a car accident. (AR 191).

## II.  STANDARD OF REVIEW

Section 405(g) of the Act grants this Court the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner . . . , with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The Court's task is limited to determining whether the ALJ's factual findings are supported by substantial evidence, which means "such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (citation omitted). The decision will be reversed "only if [it is] not supported by substantial evidence or if the ALJ applied an erroneous legal standard." *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000) (citation omitted).

To determine if substantial evidence exists, the Court "review[s] the entire administrative record, but do[es] not reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute [its] own judgment for that of the Commissioner." *Id.* (citations omitted). "Rather, if the findings of the Commissioner . . . are supported by substantial evidence, they are conclusive." *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003) (citation omitted). "In other words, so long as, in light of all the evidence, reasonable minds could differ concerning whether [the claimant] is disabled, we must affirm the ALJ's decision denying benefits." *Books v. Chater*, 91 F.3d 972, 978 (7th Cir. 1996).

### III.  ANALYSIS

*A.  The Law*

Under the Act, a claimant seeking DIB must establish that she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); *see also* 42 U.S.C. § 423(d)(1)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

The Commissioner evaluates disability claims pursuant to a five-step evaluation process, requiring consideration of the following issues, in sequence: (1) whether the claimant is currently unemployed in substantial gainful activity, (2) whether she has a severe impairment, (3) whether her impairment is one that the Commissioner considers conclusively disabling, (4) whether she is incapable of performing her past relevant work, and (5) whether she is incapable of performing any work in the national economy.[2] *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001); *see also* 20 C.F.R. § 404.1520. An affirmative answer leads either to the next step or, on steps three and five, to a finding that the claimant is disabled. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001). A negative answer at any point other than step three stops the inquiry and leads to a finding that the claimant is not disabled. *Id.* The burden of proof lies with the claimant at every step except the fifth, where it shifts to the Commissioner. *Clifford*, 227 F.3d at 868.

## B. The Commissioner's Final Decision

On February 26, 2020, the ALJ issued a decision that ultimately became the Commissioner's final decision. (AR 15-29). At step one, the ALJ concluded that McCorkle had not engaged in substantial gainful activity since May 14, 2018—the alleged onset date. (AR 20). At step two, the ALJ found that McCorkle had the following severe impairments: obesity, diabetes mellitus, degenerative disc disease, and vertigo. (*Id.*).

---

[2] Before performing steps four and five, the ALJ must determine the claimant's residual functional capacity ("RFC") or what tasks she can do despite her limitations. 20 C.F.R §§ 404.1520(e), 404.1545(a). The RFC is then used during steps four and five to help determine what, if any, employment the claimant is capable of. 20 C.F.R. § 404.1520(e).

4

At step three, the ALJ concluded that McCorkle did not have an impairment or combination of impairments severe enough to meet or equal a listing. (AR 22). The ALJ then assigned McCorkle the following RFC:

> [T]he claimant had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) subject to the following additional limitations: The claimant should never climb ladders, ropes, or scaffolds. She is able to occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl. She should avoid unprotected heights and dangerous moving machinery. She needs a cane for ambulation.

(AR 23). The ALJ found at step four that McCorkle could still perform her past relevant work as a payroll billing clerk as generally performed and as actually performed. (AR 28). Accordingly, the ALJ did not reach step five, and McCorkle's application for DIB was denied. (*Id.*).

### C. The ALJ's Consideration of McCorkle's Migraines

McCorkle's sole argument revolves around the ALJ's consideration of her migraines and vertigo. As mentioned, at step two the ALJ determined that McCorkle's vertigo constituted a severe impairment.[3] (AR 20). In doing so, the ALJ noted that the record revealed "some discussion of migraine headaches, but that [McCorkle's] description of her migraine symptoms appear rather atypical, and her primary care physicians appeared to question whether these were true migraine headaches or sinus problems." (AR 21; *see* AR 286 ("DISCUSSED SINUSITIS VS MIGRAINE.")). The ALJ also noted that McCorkle typically complained of migraines concurrent to reports of ear pain or infections, and suggested that "migraines" may have been a generic descriptor rather than a formal diagnosis. (AR 21; *see* AR 312, 419, 501, 522, 526).

---

[3] McCorkle does not specifically allege that the ALJ erred in failing to find her migraines were a severe impairment. In any event, though, "[s]tep two is merely a threshold inquiry; so long as one of a claimant's limitations is found to be severe, error at that step is harmless." *Ray v. Berryhill*, 915 F.3d 486, 492 (7th Cir. 2019). Because the ALJ found McCorkle had severe impairments and considered them in combination with her migraines, any error at this step is harmless.

Nevertheless, the ALJ opined that McCorkle's migraine complaints "centered mostly around the resultant vertigo symptoms" which were addressed in the RFC as discussed *infra*. (AR 21).

At step three, the ALJ considered the adult function reports submitted by McCorkle, where she alleged that she got three to five migraines daily, could not cook due to her migraines, and was often unable to perform minimal household or personal care tasks without getting dizzy. (AR 24 (citing AR 199-208, 225-33, 251-59)). The ALJ also considered McCorkle's hearing testimony endorsing similar symptoms. (AR 24; *see* AR 48-51). In particular, the ALJ considered McCorkle's testimony that preventative migraine medication was not effective, but she would control her symptoms by taking Tylenol 3 and turning her lights off. (AR 24; *see* AR 52).

The ALJ then considered the medical evidence in the record, including a December 2018 letter from Christopher Frazier, M.D.—McCorkle's primary care physician—who opined that her "[v]ertigo makes [it] unsafe for positions of climbing, bending, [and] standing for periods longer than a few minutes."[4] (AR 26 (quoting AR 494)). The ALJ also considered an April 12, 2019, letter from Dr. Frazier stating that McCorkle needed to use a cane. (*Id.* (citing (AR 545-46)). Still more, the ALJ noted an April 20, 2019, physical RFC assessment in which Dr. Frazier opined that McCorkle could only lift twenty pounds occasionally, ten pounds frequently, stand and walk less than two hours, sit about four hours, and needs the opportunity to shift at will from sitting and walking. (*Id.* (citing AR 543-46)). In support of these limitations, Dr. Frazier cited medical findings of chronic vertigo, chronic headaches and migraines, degenerative disc disease, back pain, prior head trauma, and fibromyalgia. (AR 543).

---

[4] Dr. Frazier's records include a second letter sent on March 17, 2019, including the same language. (AR 520).

The ALJ ultimately found Dr. Frazier's opinion to be partially persuasive—viewing it as inconsistent with the record. (AR 27). The ALJ noted that McCorkle "did complain of headaches with dizziness and lightheadedness at most encounters, but she seemed to describe this more as episodic instead of consistent with a persistent impact on her daily activities as she described it in testimony." (*Id.*). Further, the ALJ observed that McCorkle "was not referred for more extensive treatment such as balance therapy or trialed on Antivert to see if that would resolve her vertigo symptoms, and she was not referred to a neurologist for more aggressive treatment of her headaches." (*Id.*).

The ALJ also considered the opinions of the reviewing state agency physicians. (AR 27). At the initial level, Shayne Small, M.D., opined that McCorkle could perform light work with occasional to no postural restrictions. (AR 67-68). But the ALJ found Dr. Small's opinion "not fully persuasive, as he failed to consider McCorkle's "vertigo, diabetes or obesity impairments or impose any concomitant restrictions." (AR 27). The ALJ ultimately determined that these impairments warranted additional restrictions, including the limitation to sedentary work and the use of a cane. (*Id.*). These restrictions, the ALJ reasoned, were more consistent with the opinion of the redetermination level state agency physician, J.V. Corcoran, M.D., who limited McCorkle to sedentary work with postural and environmental restrictions. (AR 27; *see* AR 81-83). The ALJ, though, found Dr. Corcoran's opinion just partially persuasive and opted to assign a more restrictive RFC by incorporating the use of a cane. (AR 27).

McCorkle argues that the ALJ improperly "hyper-define[d] [McCorkle's] impairment so that migraine headaches can be ignored and vertigo emphasized." (ECF 20 at 12). In so doing, according to McCorkle, the ALJ played doctor by "diagnosing" McCorkle with "not-migraine-

headaches," and implying that McCorkle suffers just from vertigo. (*Id.* at 13). By "severing [McCorkle's] migraine[s] from vertigo," the ALJ allegedly discounted McCorkle's nausea and vomiting symptoms, which were the basis of Dr. Frazier's opinion that McCorkle would be unable to function in a work environment because her symptoms occur more than five days a month and may last an entire eight-hour work shift. (*Id*. (citing AR 520)). The Commissioner, in response, contends that the ALJ adequately weighed the medical evidence in the record concerning McCorkle's migraines before properly discounting Dr. Frazier's opinion. (ECF 21 at 11). Ultimately, McCorkle's argument is unpersuasive.

Under the prior regulations, "more weight [was] generally given to the opinion of a treating physician because of his greater familiarity with the claimant's conditions and circumstances." *Clifford*, 227 F.3d at 870 (citations omitted); *see* 20 C.F.R. § 404.1527(c)(2). This so called "treating physician rule," however, was eliminated for claims—such as McCorkle's—filed after March 27, 2017. *McFadden v. Berryhill*, 721 F. App'x 501, 505 n.1 (7th Cir. 2018). "Opinion evidence is now governed by 20 C.F.R. §§ 404.1520c [and] 416.920c (2017)." *Id.* When considering the persuasiveness of any medical opinion, an ALJ now must consider the following factors: supportability; consistency; relationship with the claimant, including the length of the treatment relationship, frequency of examination, purpose of the treatment relationship, extent of the treatment relationship, and examining relations; specialization; and any other factors that tend to support the medical opinion, including evidence that the medical source is familiar with other medical evidence or has an understanding of social security policies. *See Inmam v. Saul*, No. 1:20-CV-231 DRL, 2021 WL 4079293, at *2 (N.D. Ind. Sept. 7, 2021); 20 C.F.R. § 404.1520c.

"The regulations state that supportability and consistency are the most important factors to consider, and that the other three factors only require discussion if it is appropriate for the determination." *Etherington v. Saul*, No. 1:19-CV-475-JVB-JPK, 2021 WL 414556, at *3 (N.D. Ind. Jan. 21, 2021), *R. & R. adopted by Bart E. v. Saul*, No. 1:19-CV-475-JVB-JPK, 2021 WL 411440 (N.D. Ind. Feb. 5, 2021). "Supportability" means that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1). "Consistency," on the other hand, means that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(2).

Here, the ALJ noted that Dr. Frazier was a "treating source with specialization," but then went on to explain why his opinion was inconsistent and unsupported by the record. (AR 26). Specifically, the ALJ noted that while Dr. Frazier opined that McCorkle's migraines resulted in nausea and vomiting, her complaints of migraines primarily coincided with complaints of sinus problems or inner ear infections and balance/dizziness issues. (*See* AR 312 ("[McCorkle] reports chronic migraine & balance issues . . . . She reports that she has been on Clindamycin & PO steroids the past week for inner ear infection."), 419 (noting McCorkle presented as dizzy with a sore throat, body aches, and bilateral ear pain), 487 ("ear pain migraines leads to dizziness has to use cane to stabilize"), 501 ("Feels weak . . . . More dizzy and lightheaded. Right ear pain.")). While McCorkle testified that her migraines occurred three to five times a day, she primarily

9

testified about her resulting dizziness. (AR 24; *see* AR 50-52). In fact, at no point during her testimony did McCorkle specifically claim that her migraines caused nausea or vomiting.[5]

Critically—besides the letter written by Dr. Frazier—McCorkle fails to point to any medical evidence in the record supporting the need for additional limitations than those proscribed by the ALJ. It is true that Dr. Frazier diagnosed McCorkle with "[i]ntractable chronic migraine[s] without aura and without status migrainosus." (AR 494, 525, 554; *see also* AR 482). But "[t]he mere diagnosis of an impairment does not establish that the impairment affects the individual's ability to perform basic work activities." *Johnson v. Colvin*, No. 2:13-CV-138-PRC, 2014 WL 4722529, at *4 (N.D. Ind. Sept. 22, 2014) (collecting cases). Here, McCorkle has not carried her "burden of submitting medical evidence establishing her impairments and her residual functional capacity." *Punzio v. Astrue*, 630 F.3d 704, 712 (7th Cir. 2011); *see also Scheck v. Barnhart*, 357 F.3d 697, 702 (7th Cir. 2004). Further, this is not, then, an instance where the ALJ ignored "entire lines of contrary evidence." *Arnett v. Astrue*, 676 F.3d 586, 592 (7th Cir. 2012) (collecting cases). Rather, the ALJ considered Dr. Frazier's opinion and then explained why she discounted it.

Indeed, the ALJ correctly considered that Dr. Frazier's treatment notes did not reflect extensive treatment for her migraines, such as balance therapy or a referral to a neurologist for additional treatment for headaches.[6] (AR 26). In general, "an ALJ must not draw inferences

---

[5] McCorkle did testify that she often has stomach pain, but this appears to have been due to her "eating four Ibuprofen at a time, three and four times a day" during her migraines, rather than a separate symptom of her migraines. (AR 52; *see also* AR 286 ("INDICATES CHRONIC DAMAGE-TAKING IBUPROFEN 800MG TID FOR YRS, BUT NO LONGER")).

[6] Dr. Frazier did refer McCorkle for a neurological assessment in September 2019 after she complained of additional worsening cognitive issues and memory concerns. (AR 549, 554). As the ALJ noted, it is unclear whether McCorkle followed up on this referral. (AR 21).

10

about a claimant's lack of treatment without exploring the reasons for the inaction." *Ray*, 915 F.3d at 490-91.  That being said, "the ALJ was not required to conclude that the claimant suffered from a severe mental impairment because there was a lack of medical evidence." *Dross-Swart v. Astrue*, 872 F. Supp. 2d 780, 794 (N.D. Ind. 2012); *see also Gotz v. Barnhart*, 207 F. Supp. 2d 886, 900 (E.D. Wis. 2002) ("The ALJ did not base her finding on plaintiff's lack of psychiatric treatment.  Rather, she noted that the absence of treatment was one reason for attaching significant weight to the reports of Drs. Spear and Kaplan.  This was not error.").

Still more, both the state agency physicians reviewed Dr. Frazier's treatment notes (*see* AR 64-65, 75-76), and opined the need for a less restrictive RFC than the ALJ (*see* AR 67-68, 81-82).  The ALJ was permitted to rely on their opinions while discounting Dr. Frazier's.  *See Scheck*, 357 F.3d at 700; *see also Schmidt v. Astrue*, 496 F.3d 833, 843 (7th Cir. 2007) ("Finally, the ALJ noted that two state agency psychologists reviewed Schmidt's medical records in July 2002 and January 2003, and concluded that Schmidt did not have any significant work-related limitations cause by a mental impairment.  We thus find that the ALJ's decision not to accord controlling weight to Dr. Jalil's and Dr. Desmonde's opinions was reasonable and that the ALJ sufficiently articulated the reasons for his decision.").

As a final point, contrary to McCorkle's assertion, the ALJ did not "play doctor" by considering the extent to which Dr. Frazier's opinion was consistent with and supported by the record.  Indeed, this is not an instance where the ALJ attempted to interpret the meaning of objective medical evidence or objective medical tests.  *Cf. McHenry v. Berryhill*, 911 F.3d 866, 871 (7th Cir. 2018) ("An ALJ may not conclude, without medical input, that a claimant's most recent MRI results are 'consistent' with the ALJ's conclusions about her impairments.").  Rather,

11

the ALJ simply assessed the extent to which Dr. Frazier's opinion was consistent with and supported by the record, while weighing conflicting opinion evidence as she was free to do. *See Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004).

Ultimately, "the RFC determination is one firmly within the ALJ's discretion to determine, so long as [she] sufficiently articulates [her] reasoning and the record adequately supports [her] conclusion." *Terry v. Astrue*, No. 3:09-CV-503 JD, 2011 WL 855346, at *17 (N.D. Ind. Mar. 7, 2011) (collecting cases). Here, "the ALJ carefully considered the entire medical record, and expressly noted [McCorkle's] ongoing complaints of migraines." *Kernstein v. Berryhill*, No. 1:18CV226, 2019 WL 1950413, at *5 (N.D. Ind. May 2, 2019). "Rather [than ignoring or diminishing her complaints of migraines], the ALJ . . . accounted for them with specific limitations in the RFC." *Id.* In so doing, the ALJ explained her reasoning as to the weight she afforded Dr. Frazier's opinion, building "an accurate and logical bridge from the evidence to her conclusion, and . . . [did] not 'play doctor' by using [her] own lay opinions to fill evidentiary gaps in the record." *Chase v. Astrue*, 458 F. App'x 553, 556-57 (7th Cir. 2012) (citations and internal quotation marks omitted). Accordingly, remand is not necessary.

### IV.  CONCLUSION

For the foregoing reasons, the decision of the Commissioner is AFFIRMED. The Clerk is directed to enter a judgment in favor of the Commissioner and against McCorkle.

SO ORDERED.

Entered this 16th day of February 2022.

/s/ Susan Collins
Susan Collins
United States Magistrate Judge